UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER THOMAS,

        Plaintiff,                                      Case No. 1:10-cv-877

v.                                                    HON. JANET T. NEFF

BRADFORD WHITE CORPORATION,
*et al.*,

        Defendants.
_____/

**<u>OPINION</u>**

Pending before the Court in this removed case is Plaintiff's Motion to Remand (Dkt 14). Also pending are Defendant Gloria Noyce's Motion for Judgment on the Pleadings (Dkt 42); Defendant Bradford White Corporation's Motion for Summary Judgment (Dkt 45); and a Motion for Summary Judgment from Defendant Local 1002 International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Dkt 56). Having carefully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments surrounding this discrimination case are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons discussed herein, the Court denies Plaintiff's Motion to Remand and grants Defendant Bradford White's Motion for Summary Judgment, dismissing Plaintiff's Second Amended Complaint as preempted. Consequently, the Court finds the remaining grounds for dismissal are rendered moot.

**I. BACKGROUND**

Defendant Bradford White Corporation is a manufacturing company located in Middleville, Michigan. Bradford White produces water heaters for commercial and residential use. Bradford

White employs Plaintiff and the other two defendants, Gloria Noyce and Shannon Endsley (2d Amend. Compl. [Dkt 24] ¶ 2). Plaintiff, Noyce and Endsley are all members of the United Autoworkers International Union and its Local 1002 (hereinafter "the union") (*id.* ¶ 6).

Plaintiff claims she was harassed at work by Defendants Noyce and Endsley because of her height (5' 3") and weight (250 pounds) (2d Amend. Compl. ¶ 7). She makes the following allegations:

> 10. Gloria Noyce and Shannon Endsley continuously harassed Jennifer Thomas since July 2007, by stalking her at work, calling attention to her size, including: making comments to her such as "wide ass," "fat ass," "blubber butt," shopping for clothes at the "tent and awning store," stalking Jennifer and "oinking" (like a pig) at her, remarking that Jennifer Thomas "grazes" and eats at a "trough," saying that she does not know the identity of the father of her young child. Shannon Endsley has, on several occasions, intentionally come dangerously close to hitting Plaintiff with a Hi lo and a powered sweeping machine.
>
> 11. Shortly after midnight of January 8, 2009, Shannon Endsley opened the loading dock area's outside, overhead door several times for no other purpose than to have the cold wind make the area where Plaintiff was working, uncomfortable.
>
> 12. The above examples of harassment are intentional, malicious and conducted for the purpose of tormenting Plaintiff and causing emotional distress.

(*Id.* ¶¶ 10-12).

Defendant Bradford White indicates that some of Plaintiff's claims have been resolved pursuant to the grievance procedure contained in the Collective Bargaining Agreement and that the parties entered into Grievance Resolution Agreements in October 2008, April 2009, and May 2010 (2d Amend. Compl. ¶ 38; Df. Bradford White Resp., Dkt 20 at 8, Exs. 14 & 15).

On July 12, 2010, Plaintiff filed suit against Defendants Bradford White, Noyce and Endsley in the circuit court for Barry County, Michigan. She alleged four state-law claims: a violation of

Michigan's Elliot-Larsen Civil Rights Act (Count I), Stalking and Intentional Infliction of Emotional Distress (Count II), Civil Conspiracy (Count III), and Defamation of Character (Count IV). She amended her Complaint on September 2, 2010, to add a Request for Injunctive Relief (Count V).

On September 3, 2010, Defendant Bradford White removed the case to this Court, alleging that Plaintiff's claims are preempted by federal law, including section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, and therefore fall within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and the LMRA (Dkt 1, Notice of Removal, ¶ 22). No allegations were made to support diversity jurisdiction over these parties.

On September 15, 2010, Defendant Bradford White filed a Motion for Joinder of a Necessary Party (Dkt 7), arguing that the claims asserted in this case are inextricably intertwined with the Collective Bargaining Agreement and the parties' prior grievance settlements and therefore could not be fully or finally adjudicated unless the union was joined as a party (Dkt 8 at 3). Counsel for Plaintiff and counsel for Defendant Shannon Endsley indicated that they did not oppose the motion for joinder (Dkt 7 at 2). Defendant Noyce filed a response in support of the motion (Dkt 12). On September 17, 2010, this Court granted the motion to join the union (Dkt 13). Plaintiff subsequently filed a Second Amended Complaint (Dkt 24), adding a claim for "Failure to Fairly Represent Union Member" (Count VI).

On September 22, 2010, Plaintiff filed a Motion to Remand this case to state court (Dkt 14). Defendant Bradford White filed a response in opposition (Dkts 20-23). Defendant Bradford White also filed a Pre-Motion Conference Request, proposing to file a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Dkt 18). Following a Scheduling Conference on October 13, 2010, this Court issued a briefing schedule, permitting the parties to brief the proposed

3

dispositive motion for this Court's review in conjunction with the pending Motion to Remand (Dkt 27).

The parties subsequently filed their motion papers in December 2010. Defendant Bradford White filed a Motion for Summary Judgment (Dkt 45), to which Plaintiff filed a response in opposition (Dkt 50), and Defendant Bradford White filed a reply (Dkt 47). Defendant Noyce filed a Motion for Judgment on the Pleadings (Dkt 42), to which Plaintiff filed a response in opposition (Dkt 48), and Defendant Noyce filed a reply (Dkt 44). Last, Defendant Union filed a Motion for Summary Judgment regarding Count VI (Dkt 56), to which Plaintiff filed a response in opposition (Dkt 52) and Defendant Bradford White filed a response in partial opposition (Dkt 55). Defendant Union filed a reply to each response (Dkts 58 & 59).

## II.  ANALYSIS

### A.  Plaintiff's Motion to Remand

Removal of cases from state to federal court is authorized by 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States . . . . where such action is pending." Absent diversity of citizenship, federal-question jurisdiction is required. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

28 U.S.C. § 1447(c) instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added). *See also Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264, 268 (6th Cir. 2007) ("[S]ubject matter jurisdiction may be raised sua sponte at any juncture because a federal court lacks authority to hear a case without subject matter jurisdiction") (quoting *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990)); FED. R. CIV. P. 12(h)(3). Therefore, this Court's jurisdiction over the subject matter of this removed case is the relevant threshold inquiry.

"[T]o determine whether a claim arises under federal law, a court, under the 'well-pleaded complaint' rule, generally looks only to the plaintiff's complaint." *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); and *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). "If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable." *Id.*

A limited exception (or "corollary")[1] to the well-pleaded complaint rule is the "complete preemption" doctrine, which provides that when the preemptive force of a federal statute is so extraordinary, the preemptive force of the federal statute converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 393; *Palkow*, 431 F.3d at 552. "The complaint may thus be removed to

---

[1] "[S]ince a claim that truly is created by federal law does appear on the face of the well-pleaded complaint, the complete preemption rule often is regarded as a corollary of, rather than an exception to, the well-pleaded complaint rule." 14B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE CIVIL § 3722.2 (4th ed. 2011). *See, e.g., Husvar v. Rapoport*, 430 F.3d 777, 781 (6th Cir. 2005) (referring to complete preemption as a corollary of the well-pleaded complaint rule).

5

federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action." *Palkow*, 431 F.3d at 552.

**1.**     ***Section 301 Preemption***

"In a series of cases, the Supreme Court has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989). Section 301 of the LMRA provides in pertinent part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The purpose of preemption is "to require that all claims raising issues of labor contract interpretation be decided according to the precepts of federal labor law in order to prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements." *Smolarek*, 879 F.2d at 1329.

"Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220.

The most frequent type of § 301 contract is a collective bargaining agreement (CBA), which, in the words of § 301, is a contract "between an employer and a labor organization." *Kitzmann v. Local 619-M Graphic Commc'ns. Conference of the Int'l Bhd. of Teamsters*, 415 F. App'x 714, 717 (6th Cir. 2011). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211. Hence, the Sixth Circuit Court of Appeals has not limited § 301 preemption to cases where the precise meaning of precise words in the CBA is the crux of the state-based claim; rather, the Sixth Circuit has found many state-based claims preempted because the claims have implicated the federal policies underlying federal labor law. *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991).

The Sixth Circuit uses the following two-step approach for determining whether § 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033, 1037 (6th Cir.1989), cert. denied, 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990). Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted. *Id. See also Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1331 (6th Cir.), cert. denied, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).
>
> In order to make the first determination, the court is not bound by the "well-pleaded complaint" rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort. *Terwilliger,* 882 F.2d at 1037. If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement. *Dougherty v. Parsec, Inc.,* 872 F.2d 766, 770 (6th Cir.1989).

*DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994).

### 2. *Plaintiff's Claims*

With these precepts in mind, the Court turns to examine the claims in Plaintiff's Second Amended Complaint to determine whether they are preempted and therefore subject to dismissal. Plaintiff contends that "[n]either the union, the employer nor the individual employees who are responsible for the bullying and harassment are being sued for violating the CBA. They are being sued for violation of state laws which make no reference to the existence, much less content of any CBA" (Dkt 15 at 6). Relying on *O'Shea v. The Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989), where the Sixth Circuit found that § 301 did not preempt the plaintiff's claim where allegations were "independent of any alleged violation of the contract," Plaintiff argues that the existence of the CBA is similarly "of no moment" to the claims in this matter where nonnegotiable state-law rights serve to provide the rights and liabilities, independent from the parties' rights and obligations under the CBA (Dkt 15 at 12).

Defendant Bradford White responds that Plaintiff's claims in Counts I through IV require the Court to interpret various provisions of the parties' CBA, as well as the grievance resolution agreements into which the parties have entered pursuant to the CBA (Dkt 20 at 3). Further, Defendant contends that Plaintiff's request for injunctive relief in Count V is itself reviewable under the contractual grievance procedure and would require "on-going supervision by the Court, thus further entangling the Court in the collective bargaining process" (*id.*). Last, in its Motion for Summary Judgment, Defendant argues that the union conduct about which Plaintiff complains in Count VI, if proved, would constitute an arguably prohibited labor practice by a labor organization under the National Labor Relations Act, 29 U.S.C. § 158(b), thereby placing exclusive jurisdiction with the National Labor Relations Board (Dkt 46 at 3-4).

    **a.**    *Count I*

As a threshold matter, the Court agrees that Michigan law, not the parties' CBA, is the source of Plaintiff's claims in Counts I through V. The right to be free from discrimination, stalking and intentional infliction of emotional distress, civil conspiracy, and defamation of character are rights available to union and non-union employees alike. Hence, the analysis of these first five counts turns on the first step of the two-step approach to § 301 preemption questions, to wit: whether Plaintiff can prove the elements of her state-law claims without the necessity of contract interpretation.

In Count I, Plaintiff's hostile work environment claim under Michigan's Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.*, Plaintiff alleges that "Bradford White Corp. has allowed and tacitly approved harassment to continue which creates a hostile work environment in violation of the Elliot-Larsen Civil Rights Act by failing to make a thorough investigation and to take effective, decisive action to deter the continued harassment and by directing Plaintiff to continue to work with her tormenters" (2d Amend. Compl. ¶ 30). To prevail on her claim, Plaintiff would need to show that Defendant Bradford White failed to take prompt and appropriate remedial action after receiving adequate notice that Plaintiff was being harassed by other employees. *See Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 919 (Mich. 2000).

As Plaintiff acknowledges, "Bradford White Corporation adopted a rule prohibiting its employees from engaging in illegal acts, which would including [sic] acts of violence and stalking in the workplace" (2d Amend. Compl. ¶ 5). Specifically, the CBA between Defendant Bradford White and the union incorporated a Harassment Policy and Procedure, which imposed a duty on Defendant Bradford White, the individual defendants, and the union to identify and resolve

harassment complaints, including complaints arising from "unwelcome and hostile comments or behavior which degrades a person because of their ... weight ..." (Dkt 20, Ex. 4). Indeed, as noted, the parties further acknowledge that some of the claims in Plaintiff's Second Amended Complaint have been the subject of grievance processes. Plaintiff opines that she has "clearly plead [sic] and reasonably implied that the internal mechanism for handling employee disputes, is not working" (Pl. Resp. to Df. Noyce Mot., Dkt 49 at 6).

Section 301 preempts state law when "employment relationships which are subject to a collective bargaining agreement are implicated, or when the rights to be vindicated and the relationship between the parties are created not by state law, but by the collective agreement itself." *Jones*, 939 F.2d at 383 (internal citation omitted). The conduct upon which Plaintiff relies to form her hostile work environment claim against Defendant Bradford White falls under the authority of the parties' CBA and subsequent grievance resolution agreements; therefore, the claim is preempted under § 301. *See Retail Clerks Int'l Assoc. v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (holding that the district court's § 301 jurisdiction extends to other labor agreements "significant to the maintenance of labor peace"). As Defendant Bradford White asserts (Dkt 20 at 13), its ability to take remedial action against Defendants Noyce and Endsley is limited by the terms of the CBA, which not only create the employment relationship but also govern that relationship. In short, proof of this state-law claim requires interpretation of collective bargaining agreement terms.

  **b.**   *Count II*

In Count II, her Stalking and Intentional Infliction of Emotional Distress claim, Plaintiff alleges that the stalking by Defendants Noyce and Endsley has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community" (2d Amend. Compl. ¶ 36). Again, Plaintiff acknowledges that Defendant Bradford White "has in its employment policies, prohibitions against illegal conduct," and that its policy "against illegal conduct includes prohibiting and disciplining employees from engaging in stalking" (*id.* ¶¶ 39-40).

To prevail on her claim against the individual defendants, Plaintiff must establish the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation and (4) severe emotional distress. *Mattis v. Massman*, 355 F.3d 902, 908 (6th Cir. 2004); *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999). To determine whether Defendant Bradford White is liable under the doctrine of "respondeat superior," the court would need to determine whether the individual defendants were "acting within the scope of their employment" when they allegedly stalked Plaintiff, and whether Bradford White was "negligent or reckless" in allowing such acts to occur. *See Obigbo v. Northwest Airlines, Inc.*, 8 F. Supp. 2d 660, 667 (E. D. Mich. 1998) (citing RESTATEMENT (SECOND) OF AGENCY § 219)).

The conduct upon which Plaintiff relies to form her emotional distress claim also falls under the authority of the CBA and, therefore, the claim is preempted under § 301. For example, Plaintiff alleges that "Bradford White Comp. has refrained from implementing discipline to enforce its policies in this case" and that "[b]y not enforcing its policy to forbid illegal conduct of its employees in the work place, it has fostered and allowed the environment to exist in which the harassment, stalking and vexation persist" (2d Amend. Compl. ¶¶ 42-43). The allegations in Plaintiff's Count II are not independent of, but directly implicate, the CBA.

  c.  ***Count III***

To prevail on Count III, her Civil Conspiracy claim, Plaintiff would need to demonstrate (1) a concerted action (2) by a combination of two or more persons (3) to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). Plaintiff alleges that Defendant Bradford White "refused to make an effective effort to curtail and discourage the continuation of the bullying in the workplace, despite its policy and rules prohibiting such misconduct, thereby giving the appearance of tacit, official, approval and permission to continue to use its premises and employment relationship to cause injury to Plaintiff" (2d Amend. Compl. ¶ 47). She claims that Bradford White "intentionally assigned the Plaintiff to work with Noyce and Endsley in November 2007, April 29, 2009, and at various times thereafter, in violation of agreements to keep Plaintiff apart from Endsley and Noyce" and that Bradford White "continues to assign Gloria Noyce to work duties which provide the opportunity to continue to stalk Plaintiff" (*id.* at ¶¶ 48-49).

Plaintiff's conspiracy allegations are derivative of her hostile work environment and emotional distress claims and would, therefore, be preempted. As Defendant Bradford White points out, to decide these issues, the court would necessarily need to examine the negotiations and agreements that were entered into pursuant to the collective bargaining and grievance processes, as well as interpret Defendant Bradford White's obligations and limitations pursuant to those agreements and the CBA (Dkt 20 at 15). *See Jones*, 939 F.2d at 384 (determining that because the state-law claim could not be resolved without interpreting the grievance settlement agreement and the CBA, the claim was not a nonnegotiable independent state-law right for section 301 preemption purposes); *Retail Clerks,* 369 U.S. at 28 (encompassing labor agreements "significant to the

maintenance of labor peace"). The necessity for contract interpretation turns Plaintiff's otherwise independent claim into a claim dependent on the labor contract.

### d. Count IV

In Count IV, Plaintiff alleges two instances of defamation: (1) that Defendant Endsley "defamed Plaintiff in front of other[s] by falsely saying Plaintiff did not know the identity of the father of her child, and by falsely accusing Plaintiff of attempting to run down Defendant Noyce" (2d Amend. Compl. ¶ 52); and (2) that Defendant Noyce "defamed Jennifer Thomas at the WalMart store in Middleville, MI on or about October 20, 2009, by saying 'See you later, pig' in the presence of her daughter and the general public" (*id.* ¶ 53).

A defamation plaintiff must establish four elements: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *DeCoe*, 32 F.3d at 217 (citing *New Franklin Enters. v. Sabo*, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991)).

Again, the Harassment Policy and Procedure agreed upon in the parties' CBA imposed a duty for harassment complaints to be identified and resolved, including complaints arising from "unwelcome and hostile comments or behavior which degrades a person because of their ... weight [or] marital status." Plaintiff's first alleged instance of defamation is not independent of, but implicates, the CBA and would be subject to the grievance and arbitration procedures. The second instance, which allegedly occurred outside the work environment, is perhaps less intertwined and a closer jurisdictional question, but, given the factual premise, the Court is persuaded that the claim

would also require examination of the employment relationship, which is governed by the CBA. *See Jones*, 939 F.2d at 383.[2]

### e. Count V

In Count V, her Request for Injunctive Relief, Plaintiff requests a permanent injunction to

a. Forbid Gloria Noyce from harassing, vexing or stalking Jenifer [sic] Thomas including making derogatory remarks comments, sounds and gestures directed to or about Jenifer [sic] Thomas and to forbid Noyce from encouraging others to isolate or harass her; and,

b. Forbid Shannon Endsley from harassing, vexing or stalking Jenifer [sic] Thomas including making derogatory remarks comments, sounds and gestures directed to or about Jenifer [sic] Thomas and to forbid Endsley from encouraging others to isolate or harass her; and,

c. Require Bradford White Corp. to not make schedules or assignments of work so that Jenifer [sic] Thomas has to work with or in close proximity to Gloria Noyce and/or Shannon Endsley, and to direct that Noyce and Endsley not venture into the area where Jennifer Thomas is working or taking a break.

2d Amend. Compl., Dkt 24 at 11. Based upon these allegations, it is abundantly clear that Plaintiff's Count V is preempted by § 301 of the LMRA. The personnel and scheduling matters, as well as any additional discipline of Noyce and Endsley, are controlled by the CBA and are subject to review under the grievance procedure. Awarding such relief would necessarily and improperly embroil the court in matters of contract interpretation and administration.

### f. Count VI

---

[2]Alternatively, if this portion of Count IV were not preempted, it may fall within this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). However, given this Court's preemption analysis of the other claims, this Court is not persuaded that it would undertake to determine the issues therein. *See* 28 U.S.C. § 1441(c).

In Count VI, Plaintiff's claim for Failure to Fairly Represent Union Member, Plaintiff alleges that the union has "inadequately represented Plaintiff by failing to properly advise her of her rights to be protected from the conduct of her fellow union members," "failing to advise her of the means by which she may pursue and appeal denial of relief through the UAW's higher levels," and "consent[ing] to inadequate discipline by Bradford White Corp. against Noyce and Endsley when they persistently and intentionally engaging [sic] in protracted, wrongful conduct to make her workplace a hostile and hazardous work environment" (2d Amend. Compl. ¶¶ 65-66). According to Plaintiff, the union's conduct violates "the settlement of past grievances," and "[o]ther means are not available to Plaintiff to compelling [sic] Local 1002, UAW to enforce its bargained for agreement reflected in the aftermath of the Arbitration Opinion of April 20, 2009" (*id.* ¶ 66).

Defendant Bradford White argues that the conduct about which Plaintiff complains, if proved, would constitute an arguably prohibited labor practice by a labor organization under the National Labor Relations Act, 29 U.S.C. § 158(b), thereby placing exclusive jurisdiction with the National Labor Relations Board (Dkt 46 at 3-4). The preemption doctrine Defendant's argument implicates is "labor preemption," or "*Garmon* preemption" under *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). "*Garmon* strips courts of jurisdiction over conduct 'arguably subject' to section 7 or section 8 of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157-58, and requires them to 'defer to the exclusive competence of the National Labor Relations Board.'" *Pulte Homes, Inc. v. Laborers' Intern. Union of North America*, ___ F.3d ___ , 2011 WL 3274014, *2 (6th Cir. Aug. 2, 2011). *Garmon* is more than a traditional preemption doctrine because, when properly invoked, it tells courts "not just what law applies (federal law, not state law) but who applies it (the National Labor Relations Board, not the state

15

courts or federal district courts)." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004).

Sections 7 and 8 of the NLRA together protect certain labor practices and prohibit others, thus forcing courts to relinquish jurisdiction to the National Labor Relations Board when a suit involves an "arguably protected" or "arguably prohibited" labor practice. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608-09 (6th Cir. 2004). As Defendant Bradford White contends, the conduct about which Plaintiff complains, if proved, would constitute an arguably prohibited labor practice by a labor organization under the National Labor Relations Act, 29 U.S.C. § 158(b).

However, Plaintiff's allegations also raise questions relating to what the parties to the labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement. An action for breach of duty of fair representation that directly implicates the grievance provisions of a CBA "clearly falls within the ambit of section 301 preemption." *See, e.g., Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802 (6th Cir. 1990); *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 735 (6th Cir. 1985). In other words, both the pre-emptive effect of NLRA §§ 7-8 and the complete pre-emptive effect of LMRA § 301 apply to Plaintiff's Count VI. A federal court does not yield to the "primary jurisdiction" of the NLRB in such cases. "[I]n cases ... where a party's conduct gives rise to both a charge of an unfair labor practice [under the NLRA] and a claimed breach of a collective bargaining agreement [under § 301], the NLRB and the district court share concurrent jurisdiction." *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004).

In sum, LMRA § 301 preempts Plaintiff's Second Amended Complaint inasmuch as Plaintiff cannot prove the elements of any of her claims or the propriety of her requested remedies without examination and interpretation of the CBA and the agreements formed thereunder. Accordingly,

16

Defendant properly removed Plaintiff's action to federal court, and this Court denies Plaintiff's motion to remand the matter to state court. "A claimant may not sidestep preemption, the [United States Supreme] Court held, merely by recasting a contract claim as a tort claim." *CNH America LLC v. Int'l Union, UAW*, 645 F.3d 785, 790 (6th Cir. 2011) (citing *Allis-Chalmers*, 471 U.S. at 218). *See also Banks v. Alexander*, 294 F. App'x 221, 225 (6th Cir. 2008) (holding that parties may not avoid preemption by "relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements") (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)).

### B. Defendant Bradford White's Motion for Summary Judgment

Summary judgment is appropriate when there are no genuine disputes as to any material facts and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Here, citing *DeCoe*, 32 F.3d at 212, Defendant Bradford White argues that "[w]hen the Plaintiff is asserting state law claims that are pre-empted by federal law, summary judgment is appropriate" (Dkt 46 at 3).[3]

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220. *See, e.g., Paluda v. ThyssenKrupp Budd Co.*, 303 F. App'x 305, 309 (6th Cir. 2008) (holding that the district court did not err either in denying the plaintiffs' motion to remand or granting the defendant's motion to dismiss the preempted state-law claims).

In *DeCoe*, 32 F.3d at 214, the plaintiff-employee brought an action in state court against his employer and coworkers arising out of charges of sexual harassment against the plaintiff. He

---

[3]Defendant also argued that summary judgment would be properly entered on Count VI based on *Garmon* preemption, an argument this Court has analyzed, *supra*.

alleged slander, tortious interference with economic relations, conspiracy, and intentional infliction of emotional distress. *Id.* The defendants removed the action to federal court and moved for summary judgment. *Id.* at 215. The district court, after denying the plaintiff's motion for remand, granted the defendants' motion for summary judgment and dismissed the plaintiff's claims. *Id.* The Sixth Circuit, agreeing that the LMRA preempted the plaintiff's claims, affirmed the district court's summary judgment orders dismissing the plaintiff's complaint in its entirety. *Id.* at 220. *See also Proffitt v. Int'l Paper Co.*, No. 97-3139, 1998 WL 670027, *4 (6th Cir. 1998) (agreeing with the district court's conclusion that the plaintiff's state-law claims are preempted by § 301 of the LMRA and affirming the decision of the district court to grant the defendant summary judgment).

Here, too, the Court agrees that dismissal of Plaintiff's Second Amended Complaint is proper. If Plaintiff has a remedy for the injuries she alleges were inflicted by Defendants, the remedy cannot be based on the claims she has stated here. *See Pearson v. UAW Int'l Union*, 199 F. App'x 460 (6th Cir. 2006). Nor can the claims viably proceed where Plaintiff has not alleged, and the record does not support, the proposition that she has exhausted her available contractual remedies. *See Allis-Chalmers*, 471 U.S. at 220. As Defendant opines, "[i]f Plaintiff is unhappy with the way that her union has handled the situation, her remedy is to petition for further review by the grievance mediator or file a charge with the National Labor Relations Board" (Dkt 46 at 4). Defendant Bradford White's Motion for Summary Judgment is granted.

### III. CONCLUSION

The Court denies Plaintiff's Motion to Remand (Dkt 14) and grants Defendant Bradford White's Motion for Summary Judgment (Dkt 45). The Court declines to address the grounds for dismissal proffered by Defendant Noyce and the union, which requested a decision on the merits of

Plaintiff's allegations. Rather, the Court denies their motions as moot. An Order and Judgment consistent with this Opinion will issue.


DATED: August 29, 2011            /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge